IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANNY GEORGE SHURON | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-11-1328 |
| SOLOMON HEJIRIKA | * | |
| Defendant | * | |

\*\*\*

## MEMORANDUM

Danny Shuron, the self-represented plaintiff, filed suit against Solomon Hejirika, the Warden at the Maryland Division of Correction's Maryland Transition Center ("MTC"), alleging, *inter alia*, a denial of due process in connection with his plea of guilty at a disciplinary hearing as to certain administrative infractions that occurred while he was incarcerated and on work release.

In particular, Shuron contends that he was unable to prepare for his disciplinary hearing because he was not provided access to Division of Correction Directives ("DCDs") prior to his administrative hearing and the library at MTC was closed for two years.  ECF 1; ECF 8 at page 2.  As a consequence, claims Shuron, he was forced to plead guilty to the disciplinary rule violations and accept a sanction of thirty days loss of visits.  Additionally, he complains that the hearing officer, Victor Elbeck, told him it would be in his best interest to plead guilty to the rule violations because he would be found guilty anyway.  ECF 1 at page 7.  Shuron insists, however, that he was not guilty but had "no way to obtain law!!!"  Plaintiff also complains about his removal from the work release program when he was transferred from the Baltimore Pre-Release

Unit (BPRU) to MTC.  Shuron, who has since been released from prison, requests monetary damages of $10,000.  *Id.*[1]

Defendant has filed a "Motion To Dismiss Or, In The Alternative, Motion For summary judgment" ("Motion," ECF 18), along with a supporting legal memorandum, ECF 18-1, and several exhibits.  Although plaintiff was given notice of his right to file an opposition to the Motion and of the consequences of failing to do so, ECF 19, he did not do so.  However, plaintiff previously submitted correspondence and a memorandum to supplement his complaint.  See ECF 4; ECF 8.  Upon review of all of the submissions, the court finds a hearing in this matter unnecessary.  *See* Local Rule 105.6.

## Background

Shuron was charged with disciplinary rule violations when, on March 14, 2011, he could not be located at his work release job site.  Ms. A. Dunaway conducted a "random job check" at the Goodwill Store where Shuron was employed, ECF 18-3 (Attachment A, page 1), and was unable to locate Shuron for approximately 45 minutes.  She and Supervisor Jeffrey Stengel subsequently observed Shuron walking down the street, beyond the grounds of the Goodwill Store, carrying a box of Fruity Pebbles cereal and a quart of milk.  Shuron was accompanied by two women and a little boy.  Dunaway saw Shuron as he "reached in his pocket" to give some money to one of the women.  *Id.*, pages 1-3, 8-9.  Thereafter, at a meeting room at the site, Shuron emptied his pockets, which contained a pack of Newport cigarettes, a lighter, four ten dollar bills, and other currency.  *Id.*

---

[1] Previously, this court dismissed Shuron's due process claim because he did not lose good conduct credits as a result of the disciplinary proceedings at issue in the complaint.  ECF 5; ECF 6.  The only claim left for disposition is Shuron's claim that he was improperly deprived of access to legal materials.

Dunaway wrote a Notice of Inmate Rule Violation charging Shuron with violating various work release rules, including 310-5 (prohibiting visits and personal phone calls); 310-13 (requiring notification of employer, case management specialist and custody control office of departure from work site); 310-17 (requiring notification of supervisor of location at all times); 310-20 (prohibiting work release inmates from leaving place of employment without permission); and 310-24 (requiring inmates to abide by all terms and conditions of work release plan). In addition, Shuron was charged with violating rules 402 (prohibiting leaving an area or assignment without permission); 407 (prohibiting the performance of personal services for staff, inmates, work release employers, and persons in the community); and 409 (prohibiting the unauthorized use of a telephone call). *Id*. at pages 1, 4, and 5.

Shuron provided a written statement responding to the charges. He explained that he was in the parking lot of the Goodwill Store, he had not had breakfast or lunch, "the guy that usually gets us lunch was off," and a co-worker offered to "have one of peoples to drop off" some food. ECF 18-3 ("<u>Inmate Statement</u>" at pages 6, 7). He also admitted that he was wrong and expressed his regret. *Id*. at page 6. After Shuron was served with the notice of infraction, he was transferred to MTC.

Shuron's disciplinary hearing was held on March 31, 2011. Shuron appeared, without counsel, and Sergeant Barnett was present on behalf of the Division of Correction. Hearing Officer Elbeck reviewed the charges with Shuron, who indicated he understood them. *Id*. at pages 20-21. Shuron admitted guilt, indicated that he understood he was admitting guilt to all the charges, and waived his right to a full hearing, in exchange for a thirty day loss of visits. *Id*. at pages 14 and 23. The hearing transcript does not reflect that Shuron raised any objection during the hearing regarding access to the DCDs or legal material. See ECF 18-3, at pages 19-

24. On July 25, 2011, Shuron was released on mandatory supervision after application of 2286 days of diminution of confinement credits to his sentence. *Id*. at Ex. 2, Att. A, p. 2.

In his submissions, Shuron contends that he had no way to prepare for his adjustment hearing because Warden Hejirika did not provide DCDs to him while confined at MTC. ECF 1 at p. 4. He also alleges that he wrote to PRISM for assistance but they could not provide the information to him, either. *Id* at p. 6. According to Shuron, he wanted to fight the "absurd charges" against him, but could not do so because there was no library, law library, or copies of DCDs provided to him or anyone else at MTC. ECF 4 at p. 2. He adds that there was no way for him to "file a motion of discovery or any motions to do anything legally." *Id*. Further, Shuron states that he asked case management staff for the applicable DCDs, but was told by Mr. Patterson that the DCDs would not be provided to him. In addition, he contends that he asked Major Vincent and Sergeant Bradley, but they did not know what to do. *Id*. at p. 2.

Defendant does not dispute that the library at MTC was closed during the time Shuron was confined. The Warden explains in his Affidavit (ECF 18-4) that there was an electrical fire at MTC in June 2010, and as a result the library was closed through June 2011. The Warden also avers that, while the library is closed, case management staff visit housing areas every Friday to assist inmates with questions regarding library services and to provide Library Assistance to State Institutions (LASI) forms. A request for DCDs from an inmate would result in a case manager providing a copy to the inmate. Additional legal research is accomplished through submission of a LASI form to the school principal, Randolph Shipe. *Id*.

Additionally, Elbeck states in his Affidavit (ECF 18-2) that, if an inmate asserts that he has been unable to obtain a copy of a directive prior to a disciplinary hearing, every effort is made to provide copies of the directives to him. He adds that a postponement of the disciplinary

hearing is granted if necessary to accommodate an inmate's review of the requested DCDs.  *Id*.

He also authenticates the records appended from the Division of Correction.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that every factual dispute will defeat a summary judgment motion.  It said in *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original):

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

A prisoner has a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977).  But, what the Supreme Court said in *Lewis v. Casey*, 518 U. S. 343, 355 (1996), is pertinent:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'"  *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (*quoting Lewis*, 518 U.S. at 355).  "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. at 349.

The harm alleged by Shuron was caused by his violation of the rules in place for work release.  There is no objective evidence indicating that he was somehow railroaded into pleading guilty and, as a consequence, lost his job as well as his right to participate in the work release program.  The undisputed evidence establishes that Shuron was advised of his rights, waived those rights, and gave no indication that he was not prepared to answer for the charges leveled against him.  Indeed, Shuron does not allege that the hearing proceeded over his objection regarding the alleged lack of access to the relevant DCDs.  Thus, Shuron has failed to establish

he suffered an actual injury as a result of being confined in a prison with no law library, or from being denied access to DCDs.

Accordingly, defendant is entitled to summary judgment in his favor. A separate order follows.

February 8, 2012                                    /s/
Date                                                      Ellen L. Hollander
                                                             United States District Judge